**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GEOSONICS, INC.; | ) | |
| D.T. FROEDGE | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No: 2:14-cv-00908 |
| | ) | |
| V. | ) | |
| | ) | |
| AEGEAN ASSOCIATES, INC. | ) | |
| | ) | |
| Defendant. | | |

## GEOSONICS, INC.'S AND D.T. FROEDGE'S BRIEF IN SUPPORT OF THEIR OPPOSITION TO AEGEAN ASSOCIATES, INC.'S MOTION TO DISMISS

### -Oral Argument Requested -

## I.    INTRODUCTION

Defendant's Motion to Dismiss Plaintiff's Complaint should be denied for the following procedural and substantive reasons:

1) Defendants Motion to Dismiss contains numerous allegations of facts and law which are outside the scope of the current record and well beyond the allegations of the Complaint and therefore the Motion is in reality a premature Rule 56 Motion for Summary Judgment, but is missing most all of the requirements for a Rule 56 motion found in the local rules of the Western District of Pennsylvania including a separate statement of material and undisputed facts;

2) The facts and issues raised and created by the Defendant are genuine issues of fact, including alleged evidence extrinsic to the contracts at issue, which would require adjudication by a fact finder and/or are the opinions and legal

conclusions of Defendant and its counsel which go beyond the standards for proper adjudication of a Rule 12 Motion to Dismiss;

3) The facts raised by Defendant which are outside of the record should be "excluded" by the Court pursuant to Rule 12(d). However, if the court were to consider treating or converting this motion to a Motion for Summary Judgment, there would be a need to conduct extensive discovery to evaluate and present argument to the court on the numerous issues of fact raised by the Motion to Dismiss including, but not limited to:

    a. The extrinsic evidence raised regarding the 1990 Consulting Agreement, the meaning of same, and the intent of the parties thereto;

    b. The course of dealing between the parties for a period of over 23 years;

    c. The facts surrounding the documents attached to the Defendants Motion to Dismiss and the interpretations of those documents set forth in the Declaration of Demitrios Vassaras;

    d. The issues relating to the allegations of fact and law set forth by the Defendant relating to copyright and other intellectual property ownership;

    e. The obtaining, use and ownership of domain names;

    f. The intent of the parties in entering into the Assignment Agreement and Promissory Note and whether same was the result of economic duress;

g. The allegations that the 1990 Consulting Agreement was "fully Performed" in 1990;

h. The legal conclusions set forth in said motion which interpret the subject contracts;

i. Defendants misinterpretation of the Plaintiff's claim for Declaratory Judgment and the facts Defendant raises in support of that argument including all facts in the Declaration of Demitrios Vassaras;

j. Defendants allegations of fact in support of the Motion to Dismiss for Lack of Jurisdiction;

k. The extent of Defendant's business contacts with Pennsylvania and the fact that its acts were specifically directed to a Pennsylvania domiciled corporation for over 23 years (both when the Defendant was domiciled in Pennsylvania and later in Delaware) and that over $1,200,000 in consulting payments were invoiced by Defendant to, and payments came from, the corporate headquarters of that Pennsylvania headquartered and domiciled corporation;

l. That Defendants acts were specifically directed to Plaintiff as a Pennsylvania corporation, and this notwithstanding the fact that the Defendant may have had other facilities in other jurisdictions from time to time;

m. Defendants factual and opinion allegations of where his business activities were "directed" in dealing with GeoSonics;

n.  Other genuine issues of fact raised by Defendant which are outside the scope of the record (Complaint).

4)  Because the Plaintiffs have stated valid claims for breach of contract, unjust enrichment, and declaratory judgment based on the 1990 Consulting Agreement, the subsequent course of dealing and conduct between the parties and the economic duress which Defendant imposed upon Plaintiff to force the signing of the 2014 Assignment Agreement. Further, Plaintiff GeoSonics possesses an irrevocable, implied license in the work product it requested from the Defendant and Plaintiffs were economically coerced into signing the 2014 Agreement to avoid significant negative effects on their business. Further, this Court may exercise personal jurisdiction over the Defendant because he purposefully directed business activities into Pennsylvania, the Plaintiffs' claims arise out of those business activities, it is fair and just to exercise jurisdiction over the Defendant, and because the Defendant maintained an office in Pennsylvania for 15 years. Defendant's Declaration is silent as to whether Defendant has any other business dealings with individuals or corporations in Pennsylvania which would subject the Defendant to jurisdiction as well. Discovery would be needed on these Jurisdiction issues if the court does not "exclude" those facts and issues raised by Defendant outside of the record pursuant to Rule 12(d).

## II.    STATEMENT OF FACTS

GeoSonics, Inc. ("GeoSonics) measures and monitors the effects of ground vibration and air overpressure from blasting, pile driving and construction activity on a national and

international platform. Complaint ¶ 8 ("Compl."); Dkt. No. 1. On June 11, 1990, GeoSonics and

Defendant Aegean Associates, Inc. ("Aegean"), entered into a consulting agreement in which

Aegean agreed to deliver certain software conforming to specifications provided by GeoSonics,

technical assistance, and source code and documentation for the software and its integration into

GeoSonics' product. ("Consulting Agreement"). Compl. ¶17, Exh. A. There was no finite time

period set forth in the agreement and certainly no end date stated in the Consulting Agreement.

Compl. ¶17-18, Exh. A. The parties continued their relationship under the terms of the

Consulting Agreement and GeoSonics continued to pay Aegean $60 per hour in exchange for the

consulting on, and delivery of, software, documentation, management and source code over the

next 23 years. Compl. ¶¶ 19, 25. Aegean raised its consulting rates to $70 per hour in March

1997 and to $85 per hour in January 2005. Compl. ¶¶ 27-28. GeoSonics paid Aegean a total of

$1,238,777 for approximately 16, 611 hours of work under the Consulting Agreement through

some part of 2014. Compl. ¶ 29.

Upon information and belief, Aegean beginning in 1990, was registered as a

Pennsylvania corporation. Declaration of Marion Henry ("Henry Dec."), ¶¶ 5-7 (attached as

Exhibit 1. Aegean maintained a physical Pittsburgh, Pennsylvania office from 1990 through

2005, when it then merged with a Delaware corporation of the same name (that it had formed)

and moved its physical location to Delaware. Declaration of Marion Henry ("Henry Dec."), ¶¶ 5-

7 (attached as Exhibit 1).

For 23 years, the parties did not enter into any other written agreements regarding their

working relationship or the creation and use of intellectual property aside from the Consulting

Agreement. Compl. ¶ 21. Aegean continued to provide consulting services for various

GeoSonics products and GeoSonics client services, and Aegean never stated, in the Consulting

Agreement or over the course of 23 years, that GeoSonics would no longer have use of the client service products, software and firmware that Aegean had delivered to GeoSonics, at any termination of the Consulting Agreement or business relationship between these entities. Compl. ¶ 23.

On November 21, 2013, Aegean sent GeoSonics in Pennsylvania an email with a proposal for product development proposing that GeoSonics (1) buy a product design experiment developed by Aegean, (2) pay Aegean a rate of $115 per hour with a 60 hour per month minimum over two years to development a completely new product and **(3) keep all other existing products and services the same.** (Emphasis added regarding the course of dealing alleged by Plaintiff) Compl. ¶ 32. In February 2014, GeoSonics declined Aegean's proposal because the costly project and instrumentation overhaul were unnecessary. Compl. ¶¶ 33-34. Aegean in 2013 and 2014 had purposefully sought new business and business income in the Commonwealth of Pennsylvania through its acts described herein and over a period of 23 years.

In response to that rejection of a change in the business and financial relationship, on February 13, 2014, Demitrios Vassaras ("Vassaras"), President of Aegean, sent an email to Marion Henry ("Henry"), Chief Financial Officer of GeoSonics headquartered in Pittsburgh, stating that in March, Aegean would discontinue the services that reside on the domains "geosonics.net" and "geosonics.org" servers and that GeoSonics should pay Aegean $672,000 for rights that Aegean considered to be its intellectual property and derivative works which Aegean had developed over the course of 23 years at GeoSonics' direction under the Consulting Agreement. Compl. ¶ 35; Henry Dec. ¶ 10. GeoSonics viewed the February 13, 2014 email as a threat from Vassaras to shut down GeoSonics' servers and custom hardware unless GeoSonics paid Aegean additional funds for property for which GeoSonics had already paid over the years

and in which GeoSonics already possessed an irrevocable, implied license. Compl. ¶ 38. Without access to those products and servers, GeoSonics would have been unable to operate its business and no replacement could have been developed in such a short time period. Compl. ¶¶ 40-41. The potential for economic loss and negative effects on its business reputation were significant and likely irreparable. Compl. ¶ 44. Its clients, at over 1000 job sites around the world, who are subject to local, state and federal regulations which govern seismic activity at job sites, would have faced being out of compliance with such regulations and therefore potentially subject to sanctions and job delays. Compl. ¶ 41-47.

Ms. Henry, from the corporate headquarters in Pennsylvania, traded additional emails with Vassaras regarding the terms of the contract and, ultimately, GeoSonics acquiesced to Aegean's proposal, without modification, under economic duress. Henry Dec. ¶ 11; Compl. ¶ 46. Pursuant to the 2014 Assignment Agreement and Promissory Note ("Assignment Agreement"), Plaintiffs executed a Promissory Note for the benefit of Aegean in the amount of $672,000 plus accrued interest over 60 monthly installments. Compl. ¶ 48, Exh. B. In exchange, Aegean agreed to deliver certain information that would allow GeoSonics to access services, essential to its business, on the servers, the source code to the services on the servers, software and unspecified derivatives, and to assign certain domain names to GeoSonics. Compl. ¶¶ 49-50, Exh. B. Additionally, Aegean agreed to assign all rights, title, and interests in the services, software code, and alleged derivatives to GeoSonics. Compl. ¶ 50, Exh. B. Beginning on March 7, 2014, Aegean transferred the aforementioned items to GeoSonics. Compl. ¶ 51. GeoSonics, from it Pittsburgh, Pennsylvania headquarters, has paid $82,600 to Aegean thus far under the Assignment Agreement. Henry Dec. ¶ 14.

### III.   LEGAL STANDARD AND SUMMARY OF ARGUMENT

A.  Rule 12(b)(6) Standard: Failure to State a Claim

As set forth in *Ashcroft v. Iqbal*, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Pursuant to the Third Circuit's decision in *Fowler v. UPMC Shadyside*, when considering a motion to dismiss, district courts should follow a two part analysis. First, a district court should separate factual and legal allegations and it "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009)(citing *Iqbal* at 678). Second, district courts should determine whether the facts alleged are "sufficient" to show a "plausible claim for relief." *Fowler* at 211 (quoting *Iqbal* at 678). The court's review of a "plausible claim for relief" will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal* at 663-64. Plaintiffs believe that they have alleged sufficient facts to show a "plausible claim for relief" and that the Defendants Motion to Dismiss should be denied.

B.  Rule 12(d) Standard: Presenting Matters Outside the Record

Because a motion to dismiss is to be resolved on the face of the allegations in the plaintiff's complaint, it is not proper for the Court to consider extraneous facts or evidence raised by a defendant when testing the sufficiency of the complaint without converting the motion to dismiss into a motion for summary judgment.  *See* F.R. Civ. P. 12(d); *see also Payne v. DeLuca*, 433 F. Supp. 2d 547, 556 (W.D. Pa. 2006) ("As a general matter under Rule_12(b)(6), a court may not consider matters extraneous to the pleadings without treating the motion as one for

summary judgment …."), *reconsideration denied by* CA No. 2:02-cv-1927, 2006 U.S. Dist. LEXIS 89251(W.D. Pa. Dec. 11, 2006), and No. 02-1927, 2007 U.S. Dist. LEXIS 24243 (W.D. Pa. Apr. 2, 2007). It is within the "complete discretion" of the court to decline a defendant's invitation to convert a motion to dismiss into a motion for summary judgment. *See Roman v. UniGroup Worldwide, Inc.*, No. 13-1748, 2014 U.S. Dist. LEXIS 72506 at *18 (W.D. Pa. Apr. 14, 2014) ("A court has complete discretion to determine whether or not to accept material beyond the pleadings in connection with a Rule 12(b)(6) motion."), *adopted by* 2014 U.S. Dist. LEXIS 72338 (W.D. Pa. May 28, 2014); *see also Sanders v. Wash. County*, No. 2:13-cv-89, 2013 U.S. Dist. LEXIS 40664 at *2-3 (W.D. Pa. Mar. 22, 2013) ("The Court will take judicial notice of those public records and will disregard all other materials extraneous to the Complaint. Therefore, the Court declines Defendants' invitation to convert the Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment."); *Rycoline Prods. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) ("[The district court] could have denied the motion without prejudice to renew in the form of a motion for summary judgment pursuant to FED. R. CIV. P. 56."). This discretion notwithstanding, a court may not convert a motion to dismiss into a motion for summary judgment "when it finds that there exists a genuine issue of material fact." *Roman*, 2014 U.S. Dist. LEXIS 72506 at *18 n.4 (citing *Kamens v. Summit Stainless, Inc.*, 586 F.Supp. 324, 328 (E.D. Pa. 1984)). Even in instances where the court decides that the interests of judicial economy would be served by converting a motion to dismiss into a motion for summary judgment because there are no disputed issues of material fact, however, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Payne v. DeLuca*, 433 F. Supp. 2d at 556 (holding that

court must "giv[e] all parties reasonable opportunity to present materials pertinent to such a motion under Rule 56").

Turning to this case, Plaintiffs have carried their burden of alleging sufficient factual allegations to survive Defendant's Motion to Dismiss. In its Motion to Dismiss, Defendant does not seek dismissal on the basis of the factual allegations in the Complaint. Instead, it seeks to introduce facts that are outside of the record in an effort to contest the allegations in the Complaint. These facts may not be considered without converting the Motion to Dismiss into a motion for summary judgment. This poses a problem for Defendant, as there are material facts in dispute relating to the parties' agreement that preclude the Court from converting the Motion to Dismiss into a motion for summary judgment. Moreover, because Defendant's have not complied with Local Rule 56(B)(1), it is not even possible for Plaintiffs to readily identify which material facts are in dispute. *See Vartan Nat'l Bank v. Office of the Comptroller of the Currency*, NO. 1:08-CV-1981. 2009 U.S. Dist. LEXIS 32054 at *5 n.3 (M.D. Pa. Apr. 15, 2009) ("apply[ing] the Rule 56 standard" to motion to dismiss, but noting that party who had filed motion "to dismiss or, alternatively, for summary judgment" submitted separate statement of facts pursuant to Local Rule 56.1). For these reasons alone, the Court should deny the Motion to Dismiss.

Even if it were proper for the Court to convert the Motion to Dismiss into a motion for summary judgment, however, the Court still could not grant the Motion. This is because Plaintiffs must be afforded an opportunity to conduct discovery in connection with the issues raised in the Motion before the Court can decide the arguments. As such, under these circumstances, the Court should deny the Motion and allow the case to proceed on the merits.

C.  Rule 12(b)(2) Standard: Lack of Personal Jurisdiction

Questions of personal jurisdiction are uniquely factual in nature.  *See Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. Pa.1984) ("A Rule 12(b)(2) motion … is inherently a matter which requires resolution of factual issues outside the pleadings.").  Accordingly, where a party challenges the court's exercise of personal jurisdiction under Rule 12(b)(2), the court may decide that jurisdictional discovery is appropriate before granting dismissal of the complaint under Rule 12(b)(2).  *See Corr. Med. Care, Inc. v. Gray*, NO. 07-2840, 2008 U.S. Dist. LEXIS 6596 at *31-32 (E.D. Pa. Jan. 30, 2008) ("As an alternative to dismissing Karen as a party to this lawsuit, plaintiffs request jurisdictional discovery.  Because plaintiffs' claim is not clearly frivolous, the court will allow specific, reasonable jurisdictional discovery for a period of 45 days, should plaintiffs choose to pursue this option.") (citing *Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction . . ., courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is "clearly frivolous.'")), *later proceeding at* 2008 U.S. Dist. LEXIS 76201(W.D. Pa. Sept. 30, 2008) (denying Rule 12(b)(2) motion), *reconsideration denied by* 2008 U.S. Dist. LEXIS 91718 (W.D. Pa. Nov. 12, 2008).  To be entitled to jurisdictional discovery, a plaintiff must merely "present[ ] factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite "contacts between [the party] and the forum state."  *Square D Co. v. Scott Elec. Co.*, No. 06-00459, 2008 U.S. Dist. LEXIS 34127 at *4 (W.D. Pa. Apr. 25, 2008) (citing *Toys 'R' Us*, 318 F.3d at 456).  Said differently, a plaintiff need not carry its burden through the submission of an affidavit in order to be entitled to jurisdictional discovery.  *Id.* at *6 ("Defendants' argument that a request for jurisdictional discovery requires affidavits or other competent evidence is not supported by the case law.").

Here, as set forth more fully below, it is the position of Plaintiffs that there is sufficient evidence from which this Court may conclude that the exercise of personal jurisdiction over Defendant is proper. Defendant purposely availed itself of the jurisdiction for many years and purposely sought to do business in Pennsylvania both when it was domiciled and headquartered in Pennsylvania (such as the time when the subject 1990 contract was signed) and following its move to Delaware. If the Court were to determine that this evidence is not adequate, however, Plaintiffs request that the Court permit it to take jurisdictional discovery before ruling on the issue. [At a minimum, between the allegations in the Complaint and the statements in the affidavits, Plaintiffs have established that Defendant in the past and currently has engaged in conduct directed towards this forum.] Thus, Plaintiffs' claim is not "clearly frivolous," making it proper for the Court to allow limited discovery on the issue of personal jurisdiction in the event that it does not outright reject Defendant's argument under Rule 12(b)(2).

## IV.     ARGUMENT

> A.     *Plaintiffs Have Stated A Claim For Breach Of Contract Because Their Allegations Show The Existence Of A Contract, A Breach Of A Duty In That Contract, And Resultant Damages From That Breach Of Duty.*

Plaintiffs have sufficiently pleaded a claim for breach of contract and that the contract was never terminated or expired. To state a claim for a breach of contract, the plaintiffs must allege (1) the existence of a contract, (2) a breach of the duty in the contract, and (3) damages as a result of the breach of the duty imposed in the contract. *Morgan Truck Body, LLC v. Integrated Logistics Solutions, LLC v. Integrated Logistics Solutions, LLC*, 2008 No. 07-1225, U.S. Dist. LEXIS 21962, at *10 (E.D. Pa. March 20, 2008).

> 1.     *A Contract Existed Between GeoSonics And Aegean Because The Parties Entered Into The 1990 Consulting Agreement; Never Terminated That*

*Agreement; and Continued to Perform Under That Agreement Through Their Course Of Dealing And Conduct.*

Even if a fact finder would conclude, as Defendants argue, that the 1990 Consulting Agreement was expired, (which is denied as alleged by the Plaintiffs in their complaint), alternatively, the conduct of the parties and their course of dealing may extend an expired, written contract and create an implied-in-fact contract. *Morgan Truck Body* at *12 (denying a motion to dismiss claims for a breach of express contract and implied contract). For purposes of a Motion to Dismiss, "whether the contract pled in the instant complaint is express or implied-in-fact is not controlling" because the legal effect of both is the same. *Id.* It is well established that if a "contract lapses but the parties to the contract continue to act as if they are performing under a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates, through words or through conduct, that it no longer wishes to continue to be bound thereby, or both parties intend that the terms not survive." *Luden's Inc. v. Local Union No. 6 of the Bakery, Confectionery & Tobacco Workers Int'l Union,* 28 F.3d 347, 355-56 (3d Cir. 1994). Thus, an implied-in-fact contract can be formed "by implication from other circumstances, including course of dealing or usage of trade or course of performance." Restatement (Second) of Contracts § 19(1) cmt. a (1981).

As alleged in the Complaint, the 1990 Consulting Agreement had no termination date and no statement of any specific event which would constitute termination of the agreement. Its terms deal both with specific and general products and services. There is no documentation of record which amends or terminates the agreement and none has been cited by Defendant in its Motion to Dismiss. The written contract and the conduct of GeoSonics and Aegean demonstrates that the parties intended that the valid, express 1990 Consulting Agreement extend beyond mere delivery of certain specific items set forth in the document. For 23 years, the Defendant

continued to deliver technology and software to GeoSonics and continued to be paid on a weekly basis for his consulting work by Geosonics as a Pennsylvania headquartered and domiciled corporation. Compl. ¶ 25 There was mutual assent between both parties that Aegean would continue its work at the same rate. Other than to increase its consulting rate in 1997 and 2004, Defendant never changed the terms of the 1990 Consulting Agreement, and no other written agreement was made between the parties for 23 years. Compl. ¶ 21, 27.

> a. *The 1990 Consulting Agreement And Parties' Subsequent Course Of Dealing Imputed An Irrevocable, Implied License In The Products To GeoSonics.*

Through the 1990 Consulting Agreement and the parties' subsequent course of dealing, Plaintiff GeoSonics possesses an irrevocable, implied license in the custom work delivered by Aegean. While the Third Circuit has not yet formally adopted an approach to determining whether an implied license has been created, generally speaking, an implied license is granted when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee that requested it, and (3) the licensor intends that the licensee-requester copy and distribute his work." *Grant Heilman Photography, Inc. v. McGraw-Hill Cos.,* No. 12-2061, 2014 U.S. Dist. LEXIS 86911, at *20-21 (E.D. Pa. June 26, 2014)(quoting *Nat'l Ass'n For Stock Car Auto Racing, Inc. v. Scharle*, 184 Fed. Appx. 270, 275 (3d Cir. 2006)(internal citations omitted)). *See also Asset Mtkg. Sys. v. Gagnon*, 542 F.3d 748, 754-55 (9th Cir. 2008); *Atkins v. Fisher*, 331 F.3d 988, 991-92 (D.C. Cir. 2003); *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996). An implied license may be granted orally or by implication. *Asset Mtkg. Sys.,* at 754. Additionally, "consent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license and is not required to

be in writing." *Morgan v. Hawthorne Homes, Inc.,* 2009 No. 05-1809, U.S. Dist. LEXIS 31456, at *50 (W.D. Pa. April 14, 2009).

Here, in the 1990 Consulting Agreement, GeoSonics requested that Aegean create certain products and software for "integration into GEOSONICS' present product." Compl. ¶16, Exh. A. The custom software could only be used by GeoSonics and further improvements and changes over the 23 years were made to the software at GeoSonics' request. Compl. ¶¶ 16, 22, 25.

Pursuant to the 1990 Consulting Agreement, Aegean also expressly agreed to "deliver" the source code and the final products to GeoSonics. Compl. ¶ 18. In the parties' subsequent course of dealing, Aegean continued to "deliver" and update the custom software to GeoSonics over the course of 23 years when it installed the software on GeoSonics' computers and cloud based servers.

Finally, Aegean's conduct at the time of creation and delivery of the custom work demonstrates that Aegean intended that GeoSonics copy and distribute the custom work. "The relevant intent is the licensor's *objective* intent at the time of the creation and delivery of the software as manifested by the parties' conduct." *Asset Mktg. Sys.,* at 756. (emphasis added). In *Asset Marketing Systems*, Gagnon provided ongoing technical assistance and custom software to Asset Marketing Systems ("AMS"). The parties entered into a Technical Services Agreement ("TSA") for Gagnon's custom computer work and the parties continued their relationship past the expiration date of the TSA without an additional express contract. The Ninth Circuit determined that AMS did possess an irrevocable, implied license in the custom work created by Gagnon because AMS had requested the custom software, Gagnon had delivered the work when he installed the software on AMS computers, and that Gagnon had intended to allow AMS to retain and modify the programs. *Id.* at 755-57. The Court noted that the TSA did not state that

continued use of the custom work would be terminated at the end of the TSA term and that Gagnon was well paid for his work under the TSA. *Id.* at 756-57. Specifically, the Ninth Circuit stated that "(u)nder the circumstances, it defies logic that AMS would have paid Gagnon for his programming services if AMS could not have used the programs without further payment pursuant to a separate licensing arrangement that was never mentioned in the TSA, and never otherwise requested at the time." *Id.* Lastly, the Ninth Circuit held that because AMS paid consideration, the license was irrevocable. *Id.* at 757.

Similarly, it would "defy logic" for GeoSonics to have paid Aegean over $1.2 million over the course of 23 years for custom software if it could not have used it without a separate licensing agreement. Compl. ¶ 29. Aegean did not discuss licensing with GeoSonics until GeoSonics declined to enter into a costly project with Aegean. Compl. ¶ 39. At that point, because GeoSonics feared that it would lose access to essential software and programs, GeoSonics agreed to enter into the 2014 Assignment Agreement with Aegean. Compl. ¶¶ 38, 40-47. However, it did not need an assignment of the copyrights because it already possessed an irrevocable, implied license in the custom work.

Aegean's Motion to Dismiss focuses on the copyrights of the work, which are different rights and irrelevant in this matter. Memorandum of Law in Support of Defendant Motion to Dismiss, p. 9, Dkt. No. 14 ("Motion to Dismiss"). *See generally Morgan* at *49-51. Even if Aegean holds the copyrights to the custom works, GeoSonics still possesses a valid license to use the custom work. There is no allegation in the Motion to Dismiss that any of the copyrights are registered and therefore no proof at this stage that they are "copyrightable" as alleged.

> 2. *The Defendant Breached The 1990 Consulting Agreement And Any Implied Contract Formed By Course Of Dealing And Defendant Caused Damages When It Demanded Additional Payment For Rights To Use The Products.*

Aegean breached the 1990 Consulting Agreement and/or the continuous or subsequent implied-in-fact contract created by the parties' subsequent course of dealing when it suddenly and unexpectedly stated that it would discontinue essential services on the Servers and demanded that GeoSonics pay Aegean additional money to have unfettered access to the software and servers that are essential to GeoSonics' business. Compl. ¶¶ 57-58. Plaintiffs agreed to the 2014 Assignment Agreement under economic duress because a loss of access to the software and programs would be catastrophic to their business. Compl. ¶ 59. Plaintiffs have suffered damages because despite already possessing an irrevocable, implied license in the Products, inter alia, they have already paid Aegean $82,600 pursuant to the Promissory Note. Compl. ¶ 60; Henry Dec. ¶ 14.

B.   *Plaintiffs Have Stated A Claim For Unjust Enrichment Because Aegean Wrongly Secured The Benefits Of The 2014 Assignment Agreement And It Should Compensate GeoSonics For Payments Under The Assignment Agreement.*

Plaintiffs have satisfactorily stated a claim for Unjust Enrichment because they were forced into the 2014 Consulting Agreement under economic duress and have paid $82,600 thus far to Aegean for access to software in which GeoSonics already possessed an irrevocable, implied license. To support a claim for unjust enrichment, Plaintiffs must show that Aegean "wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider." *Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828 F.2d 989, 999 (3d Cir. 1987))(internal citations omitted). While it is true that a claim for unjust enrichment cannot be supported if the relationship of the parties is governed by express contract, Plaintiffs allege that the 2014 Assignment Agreement is void ab initio because it was agreed to by GeoSonics under economic duress. Compl. ¶ 73. Plaintiffs are not alleging a breach of the

2014 Consulting Agreement itself, but rather that the 2014 Agreement was never formed in the first place.

As Plaintiffs have pleaded in their Complaint, GeoSonics already possessed an irrevocable, implied license in the custom software, domain names, Servers, source code, and systems that were created by Aegean. Compl. ¶ 24. Thus, Plaintiffs were surprised to receive the February 13, 2014 email from Vassaras stating that Aegean would discontinue services for GeoSonics that reside on certain servers and that GeoSonics should pay Aegean for the rights to continue using the custom software and servers. Compl. ¶ 35. Considering that the custom software and servers were essential to the operation of GeoSonics' business and no other replacement software could be created in such a short time period, GeoSonics was economically coerced into signing the 2014 Assignment Agreement. Compl. ¶¶ 40-42. Since Aegean "wrongfully secured" the benefit of additional payments for the use of the custom products, it would be unconscionable for Aegean to keep the monthly payments that GeoSonics has sent thus far and for it to continue to receive payments under the 2014 Assignment Agreement.

C.     *Plaintiffs Have Stated A Claim For Declaratory Judgment Because The Pleadings Demonstrate That There Is An Actual Controversy Between The Parties That Would Warrant Issuance Of Declaratory Judgment.*

Plaintiffs have satisfactorily stated claims for Declaratory Judgment because they have alleged facts that demonstrate that there is an "actual controversy" pursuant to the Declaratory Judgment Act. 28 U.S.C. §§ 2201, 2202. While there is no bright line test to determine whether a controversy exists, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 272(1941).

Here, the Plaintiffs allege that the 1990 Consulting Agreement and subsequent course of dealing between the parties created an irrevocable, implied license in the domain names, software, servers, systems and source code created by Aegean. See Section IV.A.1.a. The controversy here is not remote; Plaintiffs are currently paying the Defendant for the use of the products listed above in which they already possess an implied license and they were economically coerced into signing the 2014 Assignment Agreement. Compl. ¶¶ 59-60. A determination of the parties' legal rights in the domain names, software, Servers, systems and source code, and validity of the Assignment Agreement is appropriate under the Declaratory Judgment Act.

D.     *The Exercise Of Specific Personal Jurisdiction Over The Defendant Is Appropriate And Complies With Due Process*

Pursuant to Pennsylvania's long arm statute, 42 Pa. C.S.  5322, and relevant case law, the exercise of specific jurisdiction over the Defendant is appropriate. When reviewing a motion to dismiss a case for lack of personal jurisdiction, a court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank v. Shushan,* 954 F.2d 141, 142 n.1 (3d Cir. 1992), *cert. denied*, 506 U.S. 817 (1992)(citations omitted).

As recently as earlier this year, the U.S. Supreme Court re-affirmed the basic tenets of specific jurisdiction.  In *Walden v. Fiore*, the U.S. Supreme Court was called upon to decide whether the exercise of specific jurisdiction over a defendant comported with due process under a state long-arm statute.  134 S. Ct. 1115 (2014).  In resolving this issue, the court stressed the importance of the defendant's purposeful availment of the laws of the forum state. *See id.* at 1122 ("[W]e have upheld the assertion of jurisdiction over defendants who have purposefully 'reach[ed] out beyond' their State and into another by, for example, entering a contractual

relationship that 'envisioned continuing and wide-reaching contacts' in the forum State.") (citing *Burger King Corp.* v. *Rudzewicz*, 471 U. S. 462, 479-80 (1985)). Specifically, the court held that "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him," rather than "a defendant's relationship with a plaintiff or third party." *Id.* at 1123. Though, as a practical matter, the court recognized that "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties." *Id.*

Consistent with this formulation of the law, the Third Circuit generally uses a three-part test to determine whether the exercise of personal jurisdiction under Pennsylvania's long-arm statute, 42 Pa. C.S. 5322(b), is appropriate. *See O'Conner v. Sandy Lane Hotel Co.,* 496 F.3d 312, 317 (3d Cir. 2007). First, the defendant should have purposefully directed his activities at Pennsylvania, such "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295 (1980). "Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts" and the defendant need not have been physically present in the forum state to establish minimum contacts because business across state lines is often conducted over mail and wire. *Grand Entm't Group Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 482 (3d Cir. 1993); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). In *O'Conner v. Sandy Lane Hotel Co.*, the Third Circuit found that Sandy Lane, a hotel in Barbados, had purposefully directed activities at Pennsylvania when Sandy Lane mailed seasonal newsletters to the Pennsylvania home of former guests of the hotel, mailing the former guests a brochure at their home, and traded phone calls with the guests at their Pennsylvania home to form an agreement for spa services. *O'Conner* at 318.

Here, Aegean purposefully directed substantial activity (eg: marketing, provision of consulting services, invoicing and subsequent obtaining of payments for consulting services) at the corporate headquarters of GeoSonics, which is located in Pennsylvania. Compl. ¶ 4. Aegean's work product over the past 23 years was for the benefit of the corporation GeoSonics, which is headquartered in Pennsylvania. But for Aegean's dealings with the corporate headquarters of GeoSonics in Pennsylvania, Aegean would not have been paid for these consulting services. The 1990 Consulting Agreement was executed by GeoSonics in its Pennsylvania office. Henry Dec. ¶ 4. Aegean Associates was also a Pennsylvania corporation until February 2006, when it was merged into a Delaware corporation that it had formed, also named Aegean Associates, Inc. Henry Dec. at ¶ 7. Aegean received payment for his consulting services at his Pittsburgh, Pennsylvania office and Aegean has confirmed that it performed work for GeoSonics in Pennsylvania as late as 2005. Henry Dec. ¶ 6;Declaration of Demitrios Vassaras, at ¶ 5, attached to Motion to Dismiss as Exhibit 1. Over the course of 23 years, Aegean has directed all invoices and at least two fee proposals to GeoSonics' Pennsylvania office and all payments have been made by the Pennsylvania office. Henry Dec. ¶ 5. In addition, Aegean actively solicited new business and income from Geosonics in Pennsylvania in at least 2013 and 2014, and sent to Henry the February 4, 2014 email and the unsolicited February 13, 2014 email that initiated and formed the basis of the Assignment Agreement. Henry Dec. ¶ 10, Exh. DD. Over the next few months, Aegean and Ms. Henry traded emails and a telephone call over the terms of the Assignment Agreement and the Assignment Agreement was signed by Ms. Henry on behalf of GeoSonics in Pennsylvania. Henry Dec. ¶ 12; Compl. Exh. B.

Even after the execution of the Consulting Agreement, Aegean continued to provide an update on the transfer of products from Aegean to GeoSonics that were listed in the Consulting

Agreement and payments under the 2014 Consulting Agreement have been made by Ms. Henry from Pennsylvania to Aegean in Delaware. Henry Dec. ¶¶ 13-14. When a defendant has "created continuing obligations between himself and residents of the forum,…it is presumptively not unreasonable to require him to submit to…litigation in that forum as well." *Burger King,* 471 U.S. at 476 (internal quotations omitted). Aegean has enjoyed the benefits of conducting business in Pennsylvania for 23 years and should therefore "reasonably anticipate being haled into court" in Pennsylvania. *See Streamline Bus. Servs., LLC v. Vidible, Inc.*, No. 14-1433, 2014 U.S. Dist. LEXIS 118657 at *25 (E.D. Pa. Aug. 26, 2014) ("[I]n the commercial context, it is the intention to establish a common venture extending over a substantial period of time that is a more important consideration. Plaintiff has produced sufficient evidence to show this Court can exercise specific personal jurisdiction over Vidible in its breach of contract in unjust enrichment claims.") (citation omitted).

For the second part of the specific jurisdiction analysis, the district court should determine whether the Plaintiffs' claims "arise out of or relate to" any of the contacts presented in the first part of the analysis. *O'Conner* at 318 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)). Any business that benefits from Pennsylvania's state laws must also bear the costs of those benefits. *Burger King* at 476. Here, Plaintiffs' claims arise directly out of the work that Aegean has done for and at GeoSonics' direction over the past 23 years. Plaintiffs' case was precipitated by the email that was sent to Henry at the Pennsylvania office and that email formed the basis of the disputed 2014 Consulting Agreement.

For the third and final prong of the specific jurisdiction analysis, the court must determine whether the exercise of specific jurisdiction over Aegean comports with "notions of fair play and substantial justice." *O'Conner* at 324 (quoting *Int'l Shoe Co. v. Washington,* 326

U.S. 310, 316 (1945)). "If minimum contacts are present, jurisdiction will be unreasonable only in rare cases, and the defendant has a heavy burden to show an absence of fairness or lack of substantial justice." *KDH Elec. Sys. v. Curtis Tech Ltd.,* No. 08-2201, U.S. Dist. LEXIS 27632, *25 (E.D. Pa. March 19, 2010). In such cases, "due process demands no more than a reasonable forum." *O'Conner* at 325. Here, the Defendant has not and cannot demonstrate that it would be unreasonable to subject him to Pennsylvania's jurisdiction.

        E.      *The Exercise Of General Personal Jurisdiction Over The Defendant Is Also Appropriate.*

The exercise of general personal jurisdiction over the Defendant is also appropriate because Aegean maintained an office in Pennsylvania until at least 2005. General jurisdiction is appropriate when the defendant's contacts with the forum state are so "continuous and systematic" as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014). A corporation's home is "where it is incorporated and where is has its principal place of business." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846, at *2854 (2011). Here, general jurisdiction over Aegean is appropriate because Aegean maintained a Pennsylvania corporation until 2005, it performed consulting work for GeoSonics from Pennsylvania for 15 years, and it received payment from GeoSonics in Pennsylvania for 15 years. Henry Dec. ¶¶ 6-7.

        F.      *The Choice Of Law Clause In The 2014 Assignment Agreement Is Void And Not Applicable To Plaintiff's Claims.*

Plaintiffs seek declaratory judgment of this Court that the 2014 Assignment Agreement was obtained under economic duress and that, therefore, the 2014 Assignment Agreement is rescinded and void ab initio. Compl. ¶ 73. Therefore, the jurisdictional provision in the 2014 Assignment Agreement is irrelevant because Plaintiffs have not brought claims under the 2014

Assignment Agreement. In addition, Plaintiffs' claim for Breach of Contract concerns the 1990 Consulting Agreement and/or the continuing or subsequent implied-in-fact contract that was created by the parties' course of dealing and conduct over 23 years.

Moreover, a forum clause may be invalid due to fraud or overreaching. *M/S Breman v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). Plaintiffs allege that the 2014 Assignment Agreement, and therefore the jurisdictional provision, were obtained under economic duress. Compl. ¶ 59. Thus, even if this Court considers the forum clause to be relevant to this case, it should be considered invalid and inapplicable.

G.    *Defendant's Extrinsic Evidence Should Be Excluded From Review Of The Motion To Dismiss And Discovery Should Not Be Stayed Pursuant to Rule 12(d).*

Defendant's Declaration of Demitrios Vassaras and its attached exhibits ("Vassaras Declaration") should be excluded by the Court to the extent that they discuss issues unrelated to personal jurisdiction and to the extent that they offer legal conclusions.[1] *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997)(finding that a court may not consider matters outside of the pleadings when reviewing a motion to dismiss based on Fed. R. Civ. P. §12(b)(6)). Plaintiffs also dispute the authenticity and/or veracity of the exhibits in the Vassaras Declaration and they are lacking in their completeness. In addition, conversion of this Motion to Dismiss into a Motion for Summary Judgment pursuant to Fed. R. Civ. P. § 12(d) at this point in the case is premature because Plaintiffs should be afforded the opportunity to conduct discovery. This Honorable court should exclude the facts alleged by Defendant which

---

[1] However, Plaintiffs' Declaration of Marion Henry and its attached exhibits should be considered by the Court because they are necessary for the Plaintiffs' to rebut the Defendant's claim for lack of personal jurisdiction. *See Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 67 n.9 (3rd Cir. 1984)(finding that plaintiff may meet its burden of proof to rebut a jurisdictional defense through "sworn affidavits or other competent evidence").

are outside the records pursuant to Rule 12(d). Accordingly, Plaintiffs also request that Defendant's request to stay discovery pending the outcome of their Motion to Dismiss be denied.

## V.    CONCLUSION

Plaintiffs respectfully request that this Court deny the Defendant's Motion to Dismiss in its entirety for the reasons set forth above. Procedurally, Defendant has violated the proper procedures for Rule 12 motions and indeed has really filed a pre-mature Motion for Summary Judgment without following the local rules for such motions, and has raised and created numerous genuine issues of material fact which would preclude Summary Judgment in any event. Discovery is needed on all aspects of the issues raised by Defendant. Further, Plaintiffs have alleged sufficient facts for plausible claims for breach of contract, unjust enrichment, and declaratory judgment.  Additionally, Plaintiffs have alleged sufficient facts to support this Court's exercise of personal jurisdiction over the Defendant. Finally, Plaintiffs request that this Court deny the Defendant's request to stay discovery pending outcome of its Motion to Dismiss.

**Plaintiffs respectfully request oral argument on the Defendant's Motion to Dismiss.**

Respectfully submitted,

PICADIO SNEATH MILLER & NORTON, P.C.

By: */s/ Henry M. Sneath*_____
Henry M. Sneath, Esquire
PA ID No. 40559
Hetal S. Dhagat, Esquire
PA ID No. 313364
Four Gateway Center
444 Liberty Avenue, Suite 1105
Pittsburgh, PA 15222
Phone: (412) 288-4000
hsneath@psmn.com; hdhagat@psmn.com
*(Counsel for Plaintiffs)*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of ***GEOSONICS, INC.'S AND D.T FROEDGE'S BRIEF IN SUPPORT OF THEIR OPPOSITION TO AEGEAN ASSOCIATES, INC.'S MOTION TO DISMISS*** was electronically filed with the Clerk of the Court using CM/ECF, this 13th day of October, 2014, and is available for viewing and downloading from the ECF system, and was sent to the parties of record as indicated below:

## VIA E-MAIL NOTIFICATION FROM CM/ECF:

Karen R. Poppel , Esquire
Christina M. Hillson, Esquire
Novak Druce Connolly Bove Quigg LLP
1007 North Orange Street - Ninth Floor
Wilmington, DE  19801
karen.poppel@novakdruce.com
christina.hillson@novakdruce.com

*/s/ Henry M. Sneath*
Henry M. Sneath, Esquire