# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEOSONICS, INC. ET AL, | ) |
| Plaintiff, | ) Civil Action No. 2:14-cv-908 |
| v. | ) Judge Mark R. Hornak |
| AEGEAN ASSOCIATES, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Plaintiffs, GeoSonics, Inc. and its President, D.T. Froedge, brought this lawsuit alleging breach of contract, unjust enrichment, and declaratory judgment claims against Defendant, Aegean Associates, Inc. They essentially allege that Defendant violated a Consulting Agreement executed in 1990 ("1990 Agreement") for "custom software, systems, and technical support" when Defendant forced Plaintiffs to enter into a new agreement in 2014 ("2014 Agreement") by threatening to discontinue use of products and services already paid for and provided through the 1990 Agreement. ECF No. 1, at ¶¶ 55–61. They argue that even if the 1990 Agreement ceased to govern the current situation, Defendants were unjustly enriched as a result of Plaintiffs' forced signing of the 2014 Agreement, *id.* at ¶¶ 63–66, and also request that this Court declare, *inter alia*, that Plaintiffs had an irrevocable and implied license in the relevant intellectual property, the 2014 Agreement is the result of economic duress, and ask the Court to rescind the 2014 Agreement and its accompanying Promissory Note, *id.* at ¶ 73. Plaintiffs assert that they are not bringing any claims under the 2014 Agreement, ECF No. 20, at 23–24, yet admit that the 2014 Agreement "is at the heart of the instant lawsuit," ECF No. 1, at ¶ 21.

1

Before the Court is Defendant's Motion to Dismiss the Complaint, ECF No. 13, along with filings in support and in opposition thereto, ECF Nos. 14; 20; 25; 27. Also before the Court are the parties' submissions in response to this Court's Order to Show Cause as to why the case should not be dismissed for lack of subject-matter jurisdiction, dated November 20, 2014. ECF Nos. 29; 30; 32. Based on the Court's consideration of the papers filed and the matters presented at the hearing/argument on November 20, 2014 in open court as to the Defendant's Motion to Dismiss, the Court will enter an order consistent with the conclusions set forth herein, transferring the case to the United States District Court for the District of Delaware.

As an initial matter, the Court will consider whether it has subject-matter jurisdiction over this action. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).") (internal citation omitted). While the Supreme Court held in *Sinochem* that "[a] district court . . . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant," *id.* at 432, the Court also observed that when jurisdictional issues present no "arduous inquiry," such issues are properly considered before determining whether transfer is appropriate, *id.* at 436 (internal quotation marks and citation omitted).[1] In light of this Court's Order to Show Cause requesting supplemental filings

---

[1] The Supreme Court has held that 28 U.S.C. § 1404(a) is the "codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 580 (2013).

on the subject-matter jurisdiction issue, the Court believes it appropriate to address that matter first.[2]

On November 20, 2014, Plaintiffs filed a Notice of Supplemental Authority along with an exhibit, a screen shot of the Pennsylvania Department of State's website showing that Aegean Associates, Inc., an entity bearing the same name as the Defendant in this action, is a corporation registered in Pennsylvania as "Domestic" and "Active" in status. ECF Nos. 27; 27-1. Because Plaintiffs are also residents of Pennsylvania, this Court entered an Order to Show Cause dated November 20, 2014 as to whether the Court has jurisdiction under 28 U.S.C. § 1332(a). As a federal court hearing the case on diversity jurisdiction, the Court questioned whether complete diversity existed between Plaintiffs and Defendant in light of Plaintiffs' Supplemental Filing.

After reviewing the parties' submissions in response to this Court's Order to Show Cause,[3] the Court is satisfied that subject-matter jurisdiction exists in the present action. Under 28 U.S.C. § 1332(a)(1), federal courts may exercise jurisdiction over civil actions between "citizens of different [s]tates." A corporation is a "citizen" under the statute, and is deemed to reside in both its state of incorporation and the state from which its officers control the company, otherwise known as a company's "nerve center." *Johnson v. SmithKline Beecham Corp.*, 724

---

[2] This is particularly true because if this Court lacks subject-matter jurisdiction on the basis that the parties are not completely diverse, then indeed no federal court may exercise such jurisdiction by the same logic.

[3] The supplemental filings consist of (1) the Declaration of Christina Hillson, Esquire Submitted in Response to the Court's November 20 Show Cause Order, attaching a Certificate of Good Standing for the Defendant, Aegean Associates, Inc., from the Delaware Secretary of State, which states that the Defendant "is duly incorporated under the laws of the state of Delaware" and that its incorporation date was November 29, 2005, ECF Nos. 29; 29-1; (2) the Third Declaration of Demitrios Vassaras, President of Aegean Associates, Inc., attaching a copy of a 2006 "Agreement and Plan of Corporate Separation and Reorganization" by and between Aegean Associates, Inc., a Pennsylvania corporation, and Mr. Vassaras, stating that "Vassaras is the sole stockholder of the [Pennsylvania] Corporation . . . and . . . plans to relocate his residence . . . to New Castle County, Delaware and desires to change the domicile of the Corporation as well," and accordingly provides for transfer of all corporate assets and liabilities such that "[o]n the Closing Date, the Subsidiary will be a corporation duly organized . . . under the laws of the State of Delaware," ECF Nos. 30; 30-1, at 1, 4; and (3) Supplemental Briefing in Response to Order to Show Cause Regarding Lack of Diversity Jurisdiction Under 28 U.S.C. § 1332(a), indicating that the Pennsylvania corporation is a separate entity from the Delaware corporation, despite the fact that the two share the same name and sole shareholder, and citing applicable law on the issue, ECF No. 32.

F.3d 337, 347 (3d Cir. 2013) (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 81 (2010)). A district court "can base its jurisdiction only upon the citizenship of parties with 'a real interest in the litigation,'" and should not consider the citizenship of "'nominal'" parties. *Id.* at 358 (quoting *Bumberger v. Ins. Co. of N. Am.*, 952 F.2d 764, 767 (3d Cir.1991)).

This case presents a situation wherein the Defendant was previously incorporated and also maintained its nerve center in Pennsylvania. However, the litigants have submitted several documents suggesting that the Pennsylvania corporation ceased operations in 2006 and transferred all of its assets and liabilities to a Delaware corporation of the same name, and that the company has thereafter been controlled by its sole shareholder from Delaware. *See* ECF Nos. 29; 30; 32. Under Third Circuit precedent, it thus appears that even though the Pennsylvania company continues to exist in some, perhaps existential, form (as demonstrated by Plaintiffs' supplemental filing, ECF No. 27), it is not a party with an actual interest in this litigation and the Court should not consider its citizenship for diversity purposes. *Johnson*, 724 F.3d at 359. Specifically because the "Agreement and Plan of Corporate Separation and Reorganization" states that Vassaras, the "sole stockholder of the Corporation," planned "to relocate his residence from Pittsburgh, Pennsylvania to New Castle County, Delaware and desire[d] to change the domicile of the Corporation as well," ECF Nos. 30-1; 32-1, and operates and controls the Defendant, Aegean Associates, Inc. from Delaware, the Court concludes that the Defendant is a citizen of Delaware, there is complete diversity of citizenship present, and the Court has subject-matter jurisdiction over this action.

Having resolved the subject-matter jurisdiction issue, the Court would generally turn to Defendant's argument that the Court cannot exercise personal jurisdiction over it since the company lacks sufficient ties to Pennsylvania to reasonably have anticipated being haled into

4

court in this state. ECF No. 14, at 12–15. The Court declines to address this issue, however, because while this Court may indeed be one possible forum for this action, it is clearly not the only one, nor in the Court's estimation, the one to which the parties have agreed.

Paragraph 7 of the 2014 Agreement provides in part:

> This Agreement shall be construed and enforced according to the laws of Delaware and applicable federal laws and any claim relating to this Agreement shall be brought in the Delaware courts. The Parties consent to Delaware jurisdiction, agree to service of process upon them by mail or courier addressed to their respective addresses set forth herein, and waive any objections they may have to personal jurisdiction, venue, sufficiency or service of process, or under the doctrine of *forum non conveniens*.

ECF No. 1-3, at ¶ 7. "Ordinarily, a strong presumption of convenience exists in favor of a domestic plaintiff's chosen forum, and this presumption may be overcome only when the balance of the public and private interests clearly favors an alternate forum." *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013) (internal quotation marks and citation omitted). This "balance of interests" is evaluated through the doctrine of *forum non conveniens*. The Supreme Court has held that the functional equivalent of the *forum non conveniens* analysis for federal courts is codified in 28 U.S.C. § 1404(a). *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 580 (2013). The Supreme Court also held that when suit is filed in any venue outside that specified in a valid contractual forum selection clause, "a district court should ordinarily transfer the case to the forum specified in that clause" and only refrain from doing so "under extraordinary circumstances unrelated to the convenience of the parties." *Id.* at 581. Not only does a valid forum selection clause render the plaintiff's choice of venue irrelevant to the analysis, *id.*, but such a clause also requires courts to "deem the private-interest factors to weigh entirely in favor of the preselected forum," *id.* at 582. In sum,

forum selection clauses "should be given controlling weight in all but the most exceptional cases." *Id.* at 581 (internal quotation marks and citation omitted).

The Court put the parties on notice of the potential impact of *Atlantic Marine* during oral argument held on November 20, 2014, and authorized several supplemental filings after the hearing with regard to various issues. *See* ECF Nos. 27; 29; 30; 32. At no point did either party raise an objection to the Court's *authority* to transfer the case *sua sponte* under 1404(a), and the Third Circuit and others have recognized that authority. *See Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171 (3d Cir. 2011); *Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 972 (8th Cir. 2012) ("There is authority supporting the district court's ability to sua sponte transfer a case under § 1404(a)."); *Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 79 n.17 (2d Cir. 1979) ("The broad language of 28 U.S.C. § 1404(a) would seem to permit a court to order transfer [s]ua sponte.").[4]

The issue now before the Court thus boils down to two questions. First, is the 2014 Assignment Agreement a valid contract?[5] Second, if the contract is valid, should the Court enforce the forum selection clause and transfer the case to Delaware? The Court concludes that both questions must be answered in the affirmative.

With regard to the first question, Plaintiffs argue that the 2014 Agreement's forum selection clause should not control because this is an exceptional case, in that Plaintiffs only entered into the 2014 Agreement as a result of economic duress. ECF No. 20, at 23–24; Oral

---

[4] Nor would any objection on the part of either party be dispositive. *Meyers v. Heffernan*, No. 10-212, 2012 WL 1133732, at *5 (D. Del. Mar. 29, 2012) (explaining that, as long as the parties have adequate notice and opportunity to be heard on a district judge's contemplated *sua sponte* transfer, "[a] court's authority to transfer cases pursuant to 28 U.S.C. § 1404(a) does not depend upon a motion, stipulation, or consent of parties to the litigation"); *Ziemkiewicz v. R+L Carriers, Inc.*, No. 12-1923, 2013 WL 505798, at *1–2 (D.N.J. Feb. 8, 2013). Additionally, counsel for the Defendant specifically requested that the Court dismiss the case or, in the alternative, transfer the case to Delaware, an argument to which counsel for Plaintiffs responded.

[5] Indeed, the Supreme Court noted in *Atlantic Marine* that "[o]ur analysis presupposes a contractually valid forum-selection clause." 134 S. Ct. at 581 n.5.

Argument of 11/20/14. Specifically, Plaintiffs allege that Defendant forced them to enter into the 2014 Agreement by threatening to cut off access to software required to operate Plaintiffs' business, and they would not have done so absent that threat. Plaintiffs also request, as part of their plea for relief, a declaratory judgment from this Court that the 2014 Agreement is void because Plaintiffs entered into it under economic duress. ECF Nos. 1, at ¶¶ 70, 73(c); 20, at 23–24.

However, a plausible argument for duress under Pennsylvania law requires a "degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness. . . ." *Gregory v. Derry Twp. Sch. Dist.*, 418 F. App'x 148, 151–52 (3d Cir. 2011) (quoting *Carrier v. William Penn Broad. Co.*, 233 A.2d 519, 521 (Pa. 1967)). "Financial distress is not enough to necessitate a finding of economic duress." *Hotel Employees & Rest. Employees Union v. Sage Hospitality Res., L.L.C., Local 57*, 299 F. Supp. 2d 461, 466 (W.D. Pa. 2003) *aff'd sub nom. Hotel Employees & Rest. Employees Union, Local 57 v. Sage Hospitality Res., LLC*, 390 F.3d 206 (3d Cir. 2004). Moreover, "there is a presumption under Pennsylvania law against finding duress where a party is free to consult with legal counsel." *Id.*; *see also Gregory*, 418 F. App'x at 152 ("'[W]here the contracting party is free to come and go and to consult with counsel, there can be no duress in the absence of threats of actual bodily harm.'") (quoting *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 893 (3d Cir.1975)); *Degenhardt v. Dillon Co.*, 669 A.2d 946, 950 (Pa. 1996) ("[W]here a party has had the *opportunity* to consult with legal counsel before entering into a contract, that same party cannot later invalidate the contract by claiming economic duress.").[6] Finally, there is support for the proposition that to raise a claim or defense

---

[6] The Pennsylvania Supreme Court also stated in *Degenhardt* that "[a] party's mere execution of a contract without counsel present at the exact moment is of little significance," and went on to explain that the rule governs in any

7

of duress, the party seeking to assert it must prove "that there was no immediate legal remedy available as an alternative to executing the agreement." *Hotel Employees*, 299 F. Supp. 2d at 466.

Plaintiffs have not adequately alleged circumstances that could support a finding of economic duress. First, Plaintiffs allege in the Complaint, *inter alia*, that "GeoSonics would have faced serious and irreparable economic loss and loss of good will from customers seeking alternate seismic monitoring providers and from negative effects on its business reputation" if Plaintiffs did not sign the 2014 Agreement and Defendant cut off access to its servers and source code. ECF No. 1, at ¶¶ 41, 44. This and similar claims simply do not meet the high bar of a threatened action that would "overcome the mind of a person of ordinary firmness." *Gregory*, 418 F. App'x at 152. Threatened loss of business alone amounts to no more than financial distress, which cannot satisfy the standard. *Hotel Employees*, 299 F. Supp. 2d at 466.

Second, the Court's exchange with counsel during oral argument leads the Court to conclude that Plaintiffs were free to consult with counsel during negotiations of 2014 Agreement. While Plaintiffs allege that the 2014 Agreement was "drafted solely by [the Defendant]," ECF No. 1, at ¶ 48, the Complaint also includes statements that Defendant's first attempt to negotiate with Plaintiffs occurred in November of 2013, which Plaintiffs rejected, *id.* at ¶¶ 30–34, and again no later than February 13, 2014, *id.* at ¶¶ 35–47. Plaintiffs did not actually enter into the 2014 Agreement accepting those terms until March 4, 2014—almost three weeks after Defendant stated its terms. *Id.* at ¶ 48. There is no allegation that negotiations took place without any interaction with counsel, and in fact, when the Court asked counsel at argument why a lawsuit was not filed immediately after execution of the 2014 Agreement,

---

situation where a litigant is otherwise free to contact counsel and failed to request to contact counsel before signing the document. 669 A.2d at 951.

8

counsel responded that they were engaged with the case at that time, and had participated in drafting the Complaint. The Pennsylvania Supreme Court has held that counsel need not be present at the actual signing of an agreement to conclude that a party had the benefit of counsel's advice in entering into that agreement, *Degenhardt*, 669 A.2d at 950, and the Third Circuit has explained that absent a threat of bodily harm, the ability to consult with counsel vitiates any potential claim of economic duress, *Gregory*, 418 F. App'x at 152. With that standard in mind, the Court is precluded from finding the circumstances underlying the execution of the 2014 Agreement, as pled, constitute economic duress.

Third, the Court concludes that Paragraph 47 of the Complaint[7] is implausible, and that in fact there were adequate legal remedies available as alternatives to executing the agreement. *Hotel Employees*, 299 F. Supp. 2d at 466. While Plaintiffs contend that they "did not believe that they could file a legal action, even for injunctive relief on an emergent basis, without jeopardizing their need for 24/7 access to the Servers" and that "[a]n injunction could not have been obtained in time, or in a manner, to prevent the potential for the relatively simple process of data destruction" at Defendant's election, ECF No. 1, at ¶ 47, the Court is hard pressed to conclude that a defendant under Court Order to refrain from any such destruction would purposely disregard such an Order and risk being held in contempt and all that would entail. Based on the allegations of the Complaint, the Court concludes that it is implausible that

---

[7] The full text of Paragraph 47 states as follows:
> GeoSonics and Froedge did not believe that they could file a legal action, even for injunctive relief on an emergent basis, without jeopardizing their need for 24/7 access to the Servers; there was no guarantee that Aegean would not destroy both access to and/or the actual data and software that was critical to the business of GeoSonics and its many customers around the country[.] An injunction could not have been obtained in time, or in a manner, to prevent the potential for the relatively simple process of data destruction, should Aegean have decided to permanently destroy or to move the data and source codes to a different location.

ECF No. 1, at ¶ 47.

Plaintiffs could not have sought a temporary restraining order, *ex parte*, if necessary, FED. R. CIV. P. 65(b)(1), to vitiate the threat they say concerned them.

For the foregoing reasons, the Court concludes that Plaintiffs have not plausibly pled that the 2014 Agreement is invalid and the product of economic duress. The next inquiry is therefore whether the Court should enforce the forum selection clause contained in the 2014 Agreement.

The Court must first note that the 2014 Agreement is not exclusively at issue in this action. However, exclusivity is not the test. Not only does the 2014 Agreement explicitly state that "any claim *relating* to this Agreement shall be brought in the Delaware courts," ECF No. 1-3, at ¶ 7 (emphasis added), but Plaintiffs also characterize the 2014 Agreement in its entirety in their Complaint as a document "at the heart of the instant lawsuit." ECF No. 1, at ¶ 21. The Court relies on parties to candidly describe their own claims, and Plaintiffs' explanation of the 2014 Agreement's relevance, coupled with that contract's forum selection clause indicating that any claim "relating to" it must be brought in Delaware, compels the Court to conclude the Western District of Pennsylvania is not the appropriate forum for this action.

As explained above, the Supreme Court has recently held that a valid forum selection clause compels courts to "deem the private-interest factors to weigh entirely in favor of the preselected forum," *Atl. Marine*, 134 S. Ct. at 582, and that absent extraordinary circumstances, the forum selected by the parties during negotiations will control. In addition, the forum selection clause in this case specifies that any claim "relating to" the 2014 Agreement must be brought in Delaware. ECF No. 1-3, at ¶ 7. Plaintiffs' Complaint alleges, in part, that the 2014 Agreement impermissibly altered the terms of a pre-existing agreement entered into in 1990 whereby Plaintiffs gained access to software used to operate their business. ECF No. 1, at ¶¶ 55–61. In essence, Plaintiffs contend that the 2014 Agreement allowed Defendant to double-bill

for access to the same software and for prior performance of the same services. *Id.* at ¶ 60–61. When the software at issue was the subject of both the 2014 Agreement and a prior contract, the Court must conclude that deciding the merits of the case would necessarily "relat[e] to" the 2014 Agreement. Therefore, the Court must presume the forum selection clause weighs in favor of transferring the case to Delaware. No party has advanced a public factor[8] that would render this case "extraordinary" and change the calculus with regard to transfer, and none is apparent to the Court. *Atl. Marine*, 134 S. Ct. at 581. Since the Court concludes that no public factors render this case extraordinary, the forum selection clause contained in the 2014 Agreement governs forum selection for this action.

The Court will therefore transfer this action forthwith to the United States District Court for the District of Delaware pursuant to pursuant to 28 U.S.C. §1404(a) and the forum selection clause contained in the 2014 Agreement, which states that "any claim relating to this Agreement shall be brought in the Delaware courts." ECF No. 1-3, at ¶ 7. An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: December 31, 2014

cc: All counsel of record

---

[8] The public factors as described by the Third Circuit are:
> [T]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995) (citations omitted).